UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 18-cv-81222-DMM**

Mary Mclean, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

Brett A. Osborn, D.O., PLLC,
a professional limited liability company,

        Defendant.
_____/

**PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF
CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD AND
ATTORNEYS' FEES, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Mary Mclean sued Brett A. Osborn, D.O., PLLC, ("Osborn") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") claiming that she was sent multiple unauthorized marketing text messages. The parties negotiated a settlement on behalf of plaintiff and a class of approximately 8,097 consumers who received multiple text messages from Defendant. On August 19, 2019, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval. Plaintiff and Class Counsel now seek Final Approval of the Settlement, along with approval of a Service Award for the Class Representative and attorneys' fees for Class Counsel and reimbursement of certain expenses incurred in prosecuting this Action.

## I.   INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[1] To market its health-related services, a third-party vendor, on behalf of Osborn, sent text messages and ringless voicemails ("Osborn Messages") to Plaintiff and approximately 8,097 other individuals. Plaintiff alleged that these actions violated the TCPA because the Osborn Messages were sent to consumers without express written consent.

The parties participated in full-day mediation with Rodney Max, a well-respected mediator in South Florida. On that day, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation. The settlement required Osborn to deposit $800,000.00 into an Escrow Account, which was timely done by Defendant. *See* Settlement Agreement and Release ("Agreement" or "Settlement") attached as *Exhibit A*.[2]

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 5 of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees; and (7) enter Final Judgment dismissing the Action with prejudice.

---

[1] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

[2] All capitalized terms used herein have the same meanings as those defined in the Agreement.

## II. MOTION FOR FINAL APPROVAL

### A. Procedural History

On September 13, 2018, Plaintiff initiated this litigation against Osborn in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. After seeking a brief extension of time, [DE #9], Osborn filed an Answer and Affirmative Defenses. [DE #11].

On October 31, 2018, after conducting a telephonic meet and confer the Parties submitted a Joint Scheduling Report. [DE #15].

Discovery commenced in November 2018. Class Counsel served written discovery and documents requests and subpoenas for documents and depositions on Osborn's mobile marketer, Jupiter SEO Experts.

In response, Osborn and third-parties produced numerous pages of paper and electronic documents and data.

On January 18, 2019, Defendant took the deposition of Plaintiff, and on January 19, 2019, Plaintiff took the corporate representative deposition of Osborn.

On January 28, 2019, Plaintiff took the deposition of the corporate representative of Jupiter SEO Experts.

On January 25, 2019, Plaintiff filed her Motion for Class Certification. [DE #28], and on February 19, 2019, Plaintiff took the deposition of three Osborn employees.

After the Parties jointly moved for an extension of the remaining deadlines related to class certification, on March 7, 2019, the Parties mediated in West Palm Beach with mediator Rodney Max. At meditation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding. The same day, the Parties filed a Notice of Settlement with the Court [DE #35]. Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

### B. Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached. The following is a summary of its material terms.

#### 1. The Settlement Class

The Settlement Class is a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All individuals (within or outside of the United States) (i) who were sent one or more Osborn Messages (ii) on his or her cellular telephone (iii) by or on behalf of Osborn, (iv) from September 13, 2014 through the date of Final Approval.

Agreement ¶ 35. The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) Osborn, as well as any parent, subsidiary, affiliate or control person of Osborn, and the officers, directors, agents, servants or employees of Osborn; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class member who has timely opted-out of this proceeding; and (6) Plaintiff's Counsel and their employees.

### 2. Settlement Consideration

Pursuant to the Settlement, Osborn, with payment coming from its insurance company, established a cash settlement fund in an amount of $800,000.00 ("Settlement Fund"). BCS Insurance Company, on behalf of Osborn, deposited the Settlement Fund into an Escrow Account.

### 3. The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members. The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement ¶¶ 40-49.

The Notice Program informed Settlement Class members of the substantive terms of the Settlement. It was designed to advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program was designed to reach a high percentage of Settlement Class members and exceeds the requirements of Constitutional Due Process.

### 4. Service Award

> Pursuant to the Settlement, Class Counsel is entitled to request, and Defendant agreed it would not oppose, a Service Award up to

$7,500.00 for the Class Representative, Mary Mclean. Agreement ¶ 64. The Service Award will

compensate Class Representative for her time and effort in the Action, including producing documents and sitting for a deposition, and for the risks she undertook in prosecuting the Action against Defendant.

### 5. Attorneys' Fees and Costs

Per the terms of the Settlement Agreement, Class Counsel was entitled to request, and Defendant agreed it would not oppose, attorneys' fees, litigation costs, and expenses of up to 33.33% of the Settlement Fund. Agreement ¶ 62. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. *See* Declaration of Scott Edelsberg ¶ 3, attached as *Exhibit B* ("Edelsberg Decl.").

### C. Argument

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

### 1. Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.

Defendant had contact information for the majority of the Settlement Class. Therefore, the Notice Program consisted of: (1) email notice ("Email Notice") designed to reach those Settlement Class members for whom Defendant maintained email addresses; (2) direct mail postcard notice ("Mailed Notice") for any Settlement Class members for whom the company did not maintain an email address, as well as for email attempts that turned out to be undeliverable; (3) a "Long-Form" notice with more detail than the email and direct mail notices, which has been available on the Settlement Website and via mail upon request; and (4) a Settlement Website and Toll-Free

Telephone Number. *See* Declaration of Amanda Sternberg ¶¶ 6-22, attached as *Exhibit C* ("Sternberg Decl.").

The Notice Administrator received data from Defendant that identified 8,097 unique phone numbers that received Osborn Messages from Defendant. *Id.* at ¶ 6. The Notice Administrator then performed a reverse telephone number look up of the 8,097 provided phone numbers to obtain name and address information for Settlement Class Members who owned the phone numbers during the class period. *Id.* at ¶ 7. The search yielded matches for 6,739 phone numbers with names and addresses. *Id.* Then, the Notice Administrator was able to match a total of 5,742 unique email addresses to the phone numbers. *Id.* at ¶ 10. The Notice Administrator emailed 5,632 Settlement Class members. *Id.* at ¶ 12. For those Settlement Class members for which only mailing addresses were available, the Administrator ran them through the National Change of Address Database and then mailed a total of 2,642 postcards to Settlement Class members. *Id.* at ¶ 18.

The Notice Administrator also established the Settlement Website, www.DROTCPASettlement.com, which went live on September 25, 2019. *Id.* at ¶ 19. The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id.* As of October 18, 2019, the Settlement Website had a total of 1,021 page views. *Id.* at ¶ 20.

In addition, a toll-free interactive Voice Response Unit ("VRU"), telephone number, was established. *Id.* at ¶ 21. By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Claim Package. *Id*.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important

documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees and expenses of up to 33.33% of the Settlement Fund, and a Service Award for the Class Representative. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).

As of October 18, 2019, the Settlement Administrator had received no requests for exclusions and ***no objections*** to the Settlement had been filed. Sternberg Decl. ¶ 24 and 25. The opt-out and objection period ends on November 5, 2019.

### 2. The Settlement Should Be Approved as Fair, Adequate and Reasonable.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set

forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a. There Was No Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in formal mediation with Rodney Max. All negotiations were arm's-length and extensive. S*ee Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); Edelsberg Decl. ¶ 4.

### b. The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to a Settlement Class comprised of 8,097 Settlement Class Members. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement,"*Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

### c. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Edelsberg Decl. ¶ 12. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive discovery with Osborn and third parties. *Id*. ¶ 13. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).

Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Osborn, and the risks inherent in trial and post-judgment appeal. Edelsberg Decl. ¶ 14. Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

This Settlement provides substantial relief to Settlement Class Members, without further delay.

This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. *Id.* at ¶ 15. Moreover, Plaintiff would have faced many obstacles in demonstrating that the software used by Defendant to transmit the subject text messages is considered an automatic telephone dialing system, as defined by the TCPA.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Class Counsel believes that Plaintiff had a strong case against Defendant. *Id.* at ¶ 7.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

      e.      **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

The $800,000.00 settlement fund in this case is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, motions for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment. Edelsberg Decl. ¶ 15.

There can be no doubt that this Settlement is a fair and reasonable recovery for the

Settlement Class in light of Osborn's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Edelsberg Decl. ¶ 16. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, LEXIS 806549, at *7 (N.D. Ill. 2016) (TCPA case providing for a $52.50 payout for each claimant); *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40).

### f. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Edelsberg Decl. ¶ 11. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement, as not a single objection was filed to date. Edelsberg Decl. ¶ 17. This is another indication that the Settlement Class is clearly satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3. The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law

or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 8,097 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is satisfied. There are multiple questions of law and fact – centering on Defendant's messaging marketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because she received Osborn Messages and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further,

Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. The necessity for the court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

### III.   APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $7,500.00. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, having her deposition taken, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information to Defendant's formal discovery requests. Edelsberg Decl. ¶ 18. Plaintiff also sat for

a deposition and was prepared to be available for trial, if necessary. *Id.* at ¶ 19.

The Service Award of $7,500.00 is less than 0.0094% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *Id.* at ¶ 20. The Service Award requested here is reasonable.

## IV.   APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees equal to 33.33% of the Settlement Fund. Edelsberg Decl. ¶ 21. Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. *Id.* at ¶ 3. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

### A.   The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained

through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

> (1) the time and labor required;
> (2) the novelty and difficulty of the relevant questions;
> (3) the skill required to properly carry out the legal services;
> (4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the clients or the circumstances;
> (8) the results obtained, including the amount recovered for the Clients;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and the length of the professional relationship with the clients; and
> (12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or

other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1. The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Edelsberg Decl. ¶ 22. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* at ¶ 23. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 24. Time and resources were also dedicated to conducting formal discovery, defending and taking depositions, and moving for class certification. *Id.* at ¶ 25.

Settlement negotiations consumed further time and resources. *Id.* at ¶ 26. The initial mediation session required substantial preparation and document review. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. All of this work consumed a substantial amount of time.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. *Id.* at ¶ 27. The time and resources devoted to this Action readily justify the requested fee.

### 2. The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Our work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues. Class Counsel possess these attributes,

and their participation added value to the representation of this Settlement Class. Edelsberg Decl. ¶ 28.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. They were worthy, highly competent adversaries. Edelsberg Decl. ¶ 29; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check. The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Members = Settlement Fund Payment. Agreement ¶ 56. Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id.* at ¶ 57.

### 4. The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks. Edelsberg Decl. ¶ 31. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Edelsberg Decl. ¶ 32. Defendant was confident in their opposition to Plaintiff's class certification argument and was likely intending on moving for summary judgment. *See* Section D.2.d., *supra* (Plaintiff's summary of Defendant's numerous defenses). The Settlement Fund obtained through the Settlement is substantial, given

the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement. Edelsberg Decl. ¶ 33.

### 5. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Edelsberg Decl. ¶ 34. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Edelsberg Decl. ¶ 35. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, Class Counsel remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. *Id.* at ¶ 36. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6. The Requested Fee Comports with Fees Awarded in Similar Cases.

Counsel's requested fee of 33.33% of the Settlement Fund is well within the range of fees typically awarded in similar cases. *Id.* at ¶ 37. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the *Camden I*. *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-

cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, the attorneys' fee requested here, which is within the range of the cases cited about, is appropriate and should be awarded.

## V.     CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit D*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Mary Mclean as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 10 of the Agreement; (5) approve the requested Service Award in the amount of $7,500.00; (6) award Class Counsel attorneys' fees in the amount of 33.33% of the Settlement Fund; and (7) enter Final Judgment dismissing the Action with prejudice.

Counsel for Defendant has no opposition to this motion.

Dated: October 21, 2019

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
mhiraldo@hiraldolaw.com
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: 954-400-4713