# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-cv-81222-DMM**

MARY MCLEAN, individually and on
behalf of all others similarly situated,

       Plaintiff,

v.

BRETT A. OSBORN, D.O., PLLC, a
professional limited liability company

       Defendant.

_____/

**<u>SETTLEMENT AGREEMENT AND RELEASE</u>**

This Settlement Agreement and Release ("Agreement") is entered into between and among the following parties, by and through their respective counsel: Plaintiff Mary Mclean, on behalf of herself and the Settlement Class, and Defendant Brett A. Osborn, D.O., PLLC.

WHEREAS, on September 13, 2018, Plaintiff filed the Class Action Complaint (the "Complaint") on behalf of herself and a putative class in the lawsuit styled *MCLEAN v. BRETT A. OSBORN, D.O., PLLC*, Case No. 18-cv-81222-DMM (S.D. Fla.) ("Litigation"), which asserts claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA");

WHEREAS, Plaintiff alleges that she and members of the class received marketing messages from Defendant without prior express consent or express written consent, which harmed her and the class (the "Allegations");

WHEREAS, Plaintiff alleges that she and other similarly situated individuals are entitled to declaratory and injunctive relief, statutory damages, attorneys' fees and costs as a result;

WHEREAS, on March 7, 2019, with the assistance of mediator Rodney Max of Upchurch Watson White & Max, counsel for the Parties met in West Palm Beach, Florida and engaged in intensive arm's-length negotiations in a mediation lasting most of the day to resolve the Litigation with a view toward achieving substantial benefits for the Settlement Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice;

WHEREAS, for settlement purposes only, Plaintiff asks that this Court certify the Settlement Class and appoint her as Class Representative and her attorneys Edelsberg Law, P.A., Shamis & Gentile, P.A., and Hiraldo, P.A. as Class Counsel in this case;

WHEREAS, based on their investigation and discovery in the Litigation and the experience of Class Counsel, Plaintiff and Class Counsel have concluded that the terms and conditions of this

Agreement are fair, reasonable, and adequate to the Settlement Class and in the best interest of the Settlement Class;

WHEREAS, Plaintiff, on behalf of herself and as the representative of the Settlement Class, and Defendant desire to resolve the dispute between them;

WHEREAS, Plaintiff, on behalf of herself and as the representative of the Settlement Class, and Defendant will execute this Agreement solely to compromise and settle protracted, complicated, and expensive litigation; and

WHEREAS, Defendant denies any and all liability or wrongdoing to the Class Representative and to the Settlement Class. Nonetheless, Defendant has concluded that further litigation would be protracted and expensive, has taken into account the uncertainty and risks inherent in this Litigation, and has determined that it is desirable that the Litigation and Allegations be fully, completely, and finally settled in the manner and upon the terms set forth herein.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

I.    **Definitions**

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement:

1.    "Action" means *MCLEAN v. BRETT A. OSBORN, D.O., PLLC*, Case No. 18-cv-81222-DMM.

2.    "Osborn" means Brett A. Osborn, D.O., PLLC.

3.    "Osborn Messages" means text messages and/or voicemail messages that were sent to Settlement Class Members by or on behalf of Osborn from September 13, 2014 through

3

the date of Final Approval.

4.   "Claim" or "Claim Form" means a written submission made to the Settlement Administrator by a Settlement Class Member for the purpose of participating as a Settlement Class Claimant in this Action.

5.   "Class Counsel" means:
Scott Edelsberg, Esq.
Edelsberg Law, P.A.
20900 NE 30th Ave, Suite 417
Aventura, FL 33180

Andrew J. Shamis, Esq.
Shamis & Gentile, P.A.
14 NE 1st Avenue, Suite 1205
Miami, Florida 33132

Manuel S. Hiraldo, Esq.
Hiraldo P.A.
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301

6.   "Claims Deadline" means the last day that Settlement Class Members may submit a Claim Form to the Settlement Administrator.  The Claims Deadline shall be 15 days after the Final Approval Hearing.

7.   "Class Period" means the period from September 13, 2014 through the date of Final Approval.

8.   "Class Representative" means Mary Mclean.

9.   "Court" means the United States District Court for the Southern District of Florida.

10.   "Effective Date" means the fifth business day after which all of the following events have occurred:

a.   The Court has entered without material change the Final Approval Order; and

b.   The time for seeking rehearing or appellate or other review has expired, and no

appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

11.   "Escrow Account" means the account to be established at an institution to be chosen by Class Counsel consistent with the terms and conditions of this Agreement.

12.   "Escrow Agent" means Epiq Class Action & Claims Solutions, Inc. ("Epiq").  Class Counsel and Osborn may, by agreement, substitute a different organization as Escrow Agent, subject to approval by the Court if the Court has previously approved the Settlement, preliminarily or finally.  In the absence of agreement, either Class Counsel or Osborn may move the Court to substitute a different organization as Escrow Agent upon a showing that the responsibilities of Escrow Agent have not been adequately executed by the incumbent. The Escrow Agent shall administer the Escrow Account.

13.   "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of a Service Award to the Class Representative.  The proposed Final Approval Order, defined below, shall be in a form agreed upon by Class Counsel and Osborn.  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

14.   "Final Approval Order" means the order and final judgment that the Court enters upon Final Approval.  In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

15.    "Net Settlement Fund" means the Settlement Fund minus Settlement Costs.

16.    "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement. "Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of Emailed Notice, Mailed Notice to the extent possible through reverse lookup of phone numbers for Class Members for whom an email address is not provided or cannot reasonably be determined (as set forth below) or for whom Email Notice bouced back and Long-Form Notice. The form of the proposed Email Notice, Mailed Notice, and Long-Form Notice agreed upon by Class Counsel and Osborn, subject to Court approval and/or modification, are attached as *EXHIBITS 1-3*.

17.    "Notice Administrator" means Hilsoft Notifications. Class Counsel and Osborn may, by agreement, substitute a different organization as Notice Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally. In the absence of agreement, either Class Counsel or Osborn may move the Court to substitute a different organization as Notice Administrator upon a showing that the responsibilities of Notice Administrator have not been adequately executed by the incumbent.

18.    "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first emailed, mailed, or appears online, and that ends no later than 30 days prior to the Final Approval Hearing. The deadline for the Opt-Out Period will be specified in the Notice.

19.    "Parties" means Plaintiff and Osborn.

20.    "Plaintiff" means Mary Mclean.

21.     "Preliminary Approval" means the date that the Court enters, without material change, an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

22.     "Released Claims" means all claims to be released as specified in this Agreement.   The "Releases" mean all of the releases contained in this Agreement.

23.     "Released Parties" means those persons released as specified in the Releases.

24.     "Releasing Parties" means Plaintiff and all Settlement Class members who do not timely and properly opt-out of the Settlement, and each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, and all those who claim through them or on their behalf.

25.     "Settlement" means the settlement into which the Parties have entered to resolve the Action.

26.     "Settlement Administrator" means Epiq.   Class Counsel and Osborn may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally.   In the absence of agreement, either Class Counsel or Osborn may move the Court to substitute a different organization as Settlement Administrator upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

27.     "Settlement Class" is defined in paragraph 35 hereof.

28.     "Settlement Class Member" means any person included in the Settlement Class who does not opt-out of the Settlement.

29.     "Settlement Class Claimant" means any person included in the Settlement Class who files a valid and timely Claim and who does not opt-out of the Settlement.

30. "Settlement Costs" mean all costs incurred by Plaintiff, the Settlement Class and Class Counsel in connection with the Action, including but not limited to, notice and settlement administration costs, including the cost associated with providing notice required by the Class Action Fairness Act codified at 28 U.S.C. Sec. 1332(d), expenses advanced by Class Counsel, attorneys' fees awarded to Class Counsel, and any Service Award payable to the Class Representative.

31. "Settlement Fund" means the $800,000.00 cash fund to be established pursuant to this Agreement.

32. "Settlement Fund Payment" means the cash dollar amount of the Settlement Fund that each Settlement Class Claimant will receive.

33. "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for members of the Settlement Class to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the order preliminarily approving this Settlement, and such other documents as Class Counsel and Osborn agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website at least until Final Approval. The URL of the Settlement Website shall be www.DROTCPAsettlement.com or such other URL as Class Counsel and Osborn agree upon in writing. Ownership of the Settlement Website URL shall be transferred to Osborn within 10 days of the date on which operation of the Settlement Website ceases.

34. "Tax Administrator" means Epiq. Class Counsel and Osborn may, by agreement, substitute a different organization as Tax Administrator, subject to approval by the Court

if the Court has previously approved the Settlement preliminarily or finally.  In the absence of agreement, either Class Counsel or Osborn may move the Court to substitute a different organization as Tax Administrator upon a showing that the responsibilities of Tax Administrator have not been adequately executed by the incumbent.   The Tax Administrator will perform all tax-related services for the Escrow Account as provided in this Agreement.

## II.   Certification of the Settlement Class

35.   For settlement purposes only, Plaintiff and Osborn agree to ask the Court to certify the following "Settlement Class," consisting of approximately 8,097 Settlement Class members, under Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure:

> All individuals (within or outside of the United States) (i) who were sent one or more Osborn Messages (ii) on his or her cellular telephone  (iii) by or on behalf of Osborn, (iv) from September 13, 2014 through the date of Final Approval.

The following are excluded from the Settlement Class:  (1) the trial judge presiding over this case; (2) Osborn, as well as any parent, subsidiary, affiliate or control person of Osborn, and the officers, directors, agents, servants or employees of Osborn; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely opted out of this proceeding; and (6) Plaintiff's Counsel and their employees.

## III.   Settlement Consideration

36.    The total cash consideration to be provided by BCS Insurance Company on behalf of Osborn to Settlement Class Claimants pursuant to the Settlement shall be $800,000.00.

37.   Settlement Costs shall be payable from the Settlement Fund. Class Counsel shall be responsible for supervising the Settlement Administrator and Notice Administrator.

Payments shall be made pursuant to a separate agreement with the Settlement Administrator and Notice Administrator.  The Parties estimate that Notice and Administration Costs shall be approximately $75,000.  If the Notice and Administration Costs are ultimately less than $75,000, the difference between the estimated $75,000 and the actual Notice and Administration Costs shall be refunded to BCS Insurance Company. If, for any reason, the Notice and Administration Costs shall exceed $75,000, any amount in excess of $75,000 shall be taken out of the Settlement Fund.

## IV.   Settlement Approval

38.   Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for an Order granting Preliminary Approval of this Settlement ("Preliminary Approval Order").  The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and Osborn.  The motion for Preliminary Approval shall request that the Court:  (1) approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claims process; (5) approve the procedures for Settlement Class members to exclude themselves from the Settlement Class or to object to the Settlement; (6) stay the Action pending Final Approval of the Settlement; and (7) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel and counsel for Osborn, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's

application for attorneys' fees, costs and expenses and a Service Award to the Class Representative ("Final Approval Hearing").

## V. Notice Administrator, Settlement Administrator, Escrow Agent, Tax Administrator

39. The Notice Administrator and the Settlement Administrator shall administer various aspects of the Settlement as described herein and perform such other functions as are specified elsewhere in this Agreement, including, but not limited to:

i.  obtaining from Class Counsel a spreadsheet of individuals in the ActiveCampaign database, which would include the name, email address, and phone number the individual provided when the individual submitted his or her contact information to Osborn (to the extent the individual provided this information); [1]

ii.  cross-referencing the Osborn Spreadsheet to the spreadsheet produced by ActiveCampaign during this Litigation which identifies Osborn Messages sent to 8,097 individuals ("ActiveCampaign Spreadsheet") to determine, to the extent reasonably possibly, the email address associated with each phone number on the ActiveCampaign Spreadsheet;

iii.  performing reverse telephone number look-ups by cellular telephone number to determine, to the extent reasonably possible, available associated physical addresses that might exist for any Settlement Class Member for whom his or her email address cannot reasonably be determined by cross-referencing the Osborn Spreadsheet to the ActiveCampaign Spreadsheet or for whom Email Notice bounces back; and verifying

---

[1] Not all individuals in the Osborn Spreadsheet are Settlement Class Members.  Individuals for whom a cellular phone number is not included in the Osborn Spreadsheet would not have been sent an Osborn Message and therefore do not have a claim against Osborn and are not in the Settlement Class.  Individuals for whom a cellular phone number is included in the Osborn Spreadsheet but the ActiveCampaign Spreadsheet does not reflect that individual's cellular phone number as having been sent an Osborn Text Message are also not Settlement Class Members

and updating the addresses received through the National Change of Address database, for the purpose of providing Mailed Notice if Email Notice is not possible;

iv. providing Email Notice for Settlement Class Members whose email addresses in the Osborn Spreadsheet can reasonably be correlated to phone numbers in the ActiveCampaign Spreadsheet;

v. providing Mailed Notice (to the extent reasonably ascertainable for Settlement Class Members whose email addresses cannot reasonably be determined by cross-referencing the Osborn Spreadsheet to the ActiveCampaign Spreadsheet or for whom Email Notice bounces back);

vi. providing Long Form Notice;

vii. establishing and maintaining the Settlement Website;

viii. establishing and maintaining a post office box for requests for exclusion from the Settlement Class;

ix. receiving, evaluating, and processing Claim Forms;

x. advising Settlement Class members if their Claim Forms are deficient;

xi. providing weekly reports about the Notice Plan and number and identity of opt-outs (if any) to Class Counsel and Osborn's counsel;

xii. establishing and maintaining an automated and live operator toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries;

xiii. responding to any Settlement Class member inquiries;

xiv. processing all requests for exclusion from the Settlement Class;

xv.     at Class Counsel's request in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

xvi.     performing the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Class Counsel and Osborn, including, but not limited to, verifying that Settlement Funds have been distributed as required;

xvii.     distributing Settlement Fund Payments;

xviii.     repaying to BCS Insurance Company the Settlement Fund in the event of a termination of the Settlement pursuant to this Agreement;

xix.     repaying to BCS Insurance Company the difference (if any) between the estimated $75,000 for Notice and Administration Costs and the actual Notice and Administration Costs;

xx.     repaying to BCS Insurance Company the actual Notice and Administration Costs up to $75,000 from any Settlement Distribution Checks that remain uncashed after 180 days from the date of issuance;

xxi.     In the event there are additional funds in the Settlement Fund after the distribution of the Settlement Fund Payments and after repaying to BCS Insurance Company the monies set forth in xix and xx above; making a second distribution to Settlement Class Members if the remaining amount is sufficient to do so; and

xxii.     performing the duties of Tax Administrator described in this Agreement, and any other Settlement-administration and tax-related function at the instruction of Class Counsel and Osborn.

**VI.**     **Notice to the Settlement Class**

40.     Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Notice Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.  The Notice shall include, among other information: a description of the material terms of the Settlement, including how to file a Claim Form, a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information.  Class Counsel and Osborn shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order.  Emailed and Mailed Notices shall not bear or include the Osborn logo or trademarks or the return address of Osborn, or otherwise be styled to appear to originate from Osborn.  Ownership of the Settlement Website URL shall be transferred to Osborn within 10 days of the date on which operation of the Settlement Website ceases, which shall be one year following distribution of the Net Settlement Fund to Settlement Class Claimants, or such other date as Class Counsel and Osborn may agree upon in writing.

41.     The Notice shall include a procedure for Settlement Class members to opt-out of the Settlement Class.  A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period.  Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement.

42.    The Notice shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and/or a Service Award to the Class Representative.  Objections to the Settlement, to the application for fees, costs, expenses and/or for the Service Award must be mailed to the Clerk of the Court, Class Counsel, and Osborn's counsel. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice.  If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope, mailed first-class postage prepaid and addressed in accordance with the instructions.  If submitted by private courier (*e.g.*, FedEx), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

43.    The Parties will include in the motion for Preliminary Approval and draft order the following recommendations to the Court for the requirements for any objections to be valid and considered by the Court:

  a.  the name of the Action;

  b.  the objector's full name, address and telephone number;

  c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

  d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

  e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy

15

of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.   a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years the objector's counsel;

h.   any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

i.   the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.   a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k.   a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l.   the objector's signature (an attorney's signature is not sufficient).

44.   Notice shall be provided to Settlement Class Members in four different ways: Email Notice, Mailed Notice(for Settlement Class Members whose email addresses are not in the Osborn Spreadsheet or the email address cannot reasonably be determined by cross-

referencing the Osborn Spreadsheet to the ActiveCampaign Spreadsheet or for whom Email Notice bounces back, provided addresses are reasonably ascertainable); Online Notice, if necessary in the judgment of the Notice Administrator to provide adequate reach to constitute best notice practicable; and Long-Form Notice on the Settlement Website and to be sent to Settlement Class Members upon request.  Not all Settlement Class Members will receive all forms of Notice.

45.     The Notice Administrator shall administer the Email Notice Program, which shall consist of an email containing the Email Notice sent to all Settlement Class Members for whom email addresses can reasonably be cross-referenced to a cellphone number in the ActiveCampaign Spreadsheet.   The Email Notice Program shall be completed no later than 70 days before the Final Approval Hearing.  The Notice Administrator shall provide Class Counsel and Osborn with an affidavit that confirms that Email Notice was given in accordance with the Email Notice Program.

46.     For Settlement Class Members whose email address cannot reasonably be determined by cross-referencing the Osborn Spreadsheet to the ActiveCampaign Spreadsheet or for whom Email Notice bounces back, the Settlement Administrator shall perform reverse telephone number look ups, shall run addresses through the National Change of Address Database, and shall, to the extent reasonably possible, mail to all Settlement Class Members for whom email addresses cannot be reasonably ascertained postcards that contain details about the Settlement ("Initial Mailed Notice").  To coordinate the Mailed Notice Program with the Online Notice Program, following the Settlement Administrator's receipt of the telephone numbers described herein, the Settlement Administrator shall promptly inform the Notice Administrator that it has received the Osborn Spreadsheet and ActiveCampaign

17

Spreadsheet.

47. The Settlement Administrator shall perform reverse lookups and reasonable address traces for all individuals for whom an email address cannot reasonably be determined by cross-referencing the Osborn Spreadsheet to the ActiveCampaign Spreadsheet or for whom Email Notice bounces back.  The Settlement Administrator shall also perform reasonable address traces for any individual to whom Mailed Notice is sent and returned as undeliverable. By way of example, a "reasonable" tracing procedure would be to run addresses through the LexisNexis database that can be utilized for such purpose.  The Settlement Administrator shall complete the re-mailing of Mailed Notice to those Settlement Class members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process").  The Settlement Administrator's continued efforts in providing Mailed Notice to individuals for whom an email address is not in the Osborn Spreadsheet or the email address cannot reasonably be determined by cross-referencing the Osborn Spreadsheet to the ActiveCampaign Spreadsheet or for whom Email Notice bounces back or Mailed Notice is returned as Undeliverable shall not affect or extend any Settlement Class member's deadlines for objecting or opting out.

48. The Mailed Notice Program shall be completed no later than 45 days before the Final Approval Hearing.  The Settlement Administrator shall provide Class Counsel and Osborn an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  If it is necessary to ensure that best notice practicable has been provided, the Notice Administrator shall administer the Online Notice Program, which shall be completed no later than 70 days before the Final Approval Hearing.  The Notice Administrator shall provide Class Counsel and Osborn with an affidavit that confirms that

Online Notice was given in accordance with the Online Notice Program.

49. Within the parameters set forth in this Agreement, further specific details of the Notice Program shall be subject to the agreement of Class Counsel and Osborn.

**VII.   Final Approval Order and Judgment**

50. The Plaintiff's Motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.  Plaintiff shall file her Motion for Final Approval of the Settlement, and her application for attorneys' fees, costs, and expenses and for a Service Award for the Class Representative, no later than 45 days prior to the Final Approval Hearing.  At the Final Approval Hearing, the Court will hear argument on Plaintiff's Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for a Service Award for the Class Representative.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fee, cost, expense or Service Award application, provided the objectors submitted timely objections that meet all of the requirements listed in the preliminary approval order and notice.

51. At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting Final Approval of the Settlement and entering final judgment thereon, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses, and a Service Award.  The proposed Final Approval Order shall be in a form agreed upon by Class Counsel and Osborn.  Such proposed Final Approval Order shall, among other things:

    a.      Determine that the Settlement is fair, adequate and reasonable;

b.      Finally certify the Settlement Class for settlement purposes only;

c.      Determine that the Notice provided satisfies Due Process requirements;

d.      Enter judgment dismissing the Action with prejudice and without costs, except as set forth in this Agreement;

e.      Bar and enjoin all Releasing Parties from asserting any of the Released Claims, including during any appeal from the Final Approval Order;

f.      Release Osborn and the Released Parties from the Released Claims; and

g.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Osborn, all Settlement Class Members, and all objectors, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

## VIII.   <u>Settlement Fund</u>

52.    In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases and the dismissal of the Action upon Final Approval, within 30 calendar days of Preliminary Approval, BCS Insurance Company, on behalf of Osborn, shall deposit the $800,000.00 Settlement Fund into the Escrow Account.  In no event shall BCS Insurance Company or Osborn be responsible for any claims, fees, or Settlement Costs exceeding the amount of the $800,000 settlement payment.

53.    Upon the establishment of the Escrow Account, the Escrow Agent may, but shall not be required to, cause the funds in the Escrow Account to be invested, in whole or in part, in interest-bearing short-term instruments or accounts—to be agreed upon by Class Counsel and Osborn —that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the

"Instruments").  The Escrow Agent may thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs and expenses, and other required disbursements, in a timely manner. Notwithstanding the foregoing, that portion of the Settlement Fund that the Settlement Administrator reasonably estimates needs to be available on a liquid basis to pay on-going costs of settlement administration, as provided in this Agreement, may be placed in one or more insured accounts that may be non-interest-bearing.  Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent.  The Escrow Agent shall communicate with Class Counsel and counsel for Osborn on at least a monthly basis to discuss potential cash needs for the following month.  All costs or fees incurred in connection with investment of the Settlement Fund in the Instruments shall not constitute a cost of settlement administration to be paid by BCS Insurance Company or Osborn, but shall instead be payable out of the Settlement Fund.

54.     The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Osborn or its counsel, or Plaintiff or Class Counsel, with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund.

Plaintiff and Class Counsel, and BCS Insurance Company and Osborn and its counsel, shall have no liability or responsibility for any of the Taxes. The Settlement Fund shall indemnify and hold Plaintiff and Class Counsel, and BCS Insurance Company and Osborn and its counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

55.    The Settlement Fund shall be used for the following purposes:

    a.    Distribution of Settlement Fund Payments to Settlement Class Claimants;

    b.    Payment of any Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses;

    c.    Payment of any Court-ordered Service Award to the Class Representative;

    d.    Payment of any secondary and/or residual distribution, together with any administrative costs associated therewith;

    e.    Payment of all Taxes, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account, in a timely manner consistent with the recommendation of the Tax Administrator, subject to approval by Class Counsel and Osborn; and

    f.    Payment of additional fees, costs and expenses not specifically enumerated in subparagraphs (a) through (e) of this paragraph, subject to approval of Class Counsel and Osborn.

## IX.    <u>Calculation of Distributions from Settlement Fund</u>

56.    Each Settlement Class member who timely files with the Settlement Administrator a valid Claim Form shall automatically receive a cash distribution payable by check. The amount of each cash distribution shall be determined by the following formula: Net Settlement

Fund divided by total number of Settlement Class Members = Settlement Fund Payment.

X.      **Distribution of Settlement Fund, Disposition of Residual Funds**

57.     The Settlement Administrator shall distribute the funds in the Settlement Fund in the following order and within the time period set forth with respect to each such payment:

a.      First, to the Class Representative any Service Award and to Class Counsel any attorneys' fees and costs ordered by the Court, subject to the following:

    a.      If the Final Approval Order as issued by the Court has no objections to the Settlement, the payment of the Service Award and any attorneys' fees and costs shall made by the Settlement Administrator within five days of the Final Approval Order; or

    b.      In all other cases, the payment of the Service Award and attorneys' fees and costs shall be made within five days of the Effective Date.

b.      Next, no later than 45 days following the Effective Date, the Settlement Class Claimants shall be sent their Settlement Fund Payments;

c.      Next, four months after the date the Settlement Administrator mails the first round of Settlement Fund Payments, any residual funds in the Settlement Fund shall be distributed as follows:

    i.      First, any Settlement Fund Payments that remain uncashed after 180 days from issuance shall first go to BCS Insurance Company to cover Notice and Administration Costs of up to $75,000 (or the amount of actual Notice and Administration Costs if such costs are less than $75,000 in light of ii below);

    ii.     Second, the difference (if any) between the estimated Notice and Administration Costs of $75,000 and the actual Notice and Administration Costs shall be refunded

to BCS Insurance Company;

iii. Third, any remaining funds after i. and ii. above shall be distributed on a *pro rata* basis to participating Settlement Class Claimants who received and cashed Settlement Fund Payments, to the extent feasible and practical in light of the costs of administering such subsequent payments, unless other specific reasons exist that would make such further distributions impossible or unfair;

iv. Finally, in the event the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make individual distributions or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and Osborn shall file recommendations with the Court for distribution of the residual funds consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c), together with supporting materials. The Court shall have the discretion to approve, deny, amend or modify, in whole or in part, the proposed recommendations for distribution of the residual funds in a manner consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c). The Parties agree that any residual funds shall not be used for any litigation purpose or to disparage any Party. The Parties further agree that the Court's approval, denial, amendment or modification, in whole or in part, of the recommendations for distribution of the residual funds pursuant to this paragraph shall not constitute grounds for termination of the Settlement pursuant to this Agreement; and

v. All costs associated with the disposition of residual funds – whether through additional distributions to Settlement Class Claimants and/or through an alternative

24

plan approved by the Court – shall be borne solely by the Settlement Fund.

**XI.**  **Claims Process**

58.     Each member of the Settlement Class who does not timely opt-out from the Settlement

shall be a Settlement Class Member and entitled to make a Claim.  Each Settlement Class

Member shall be entitled to make one Claim per associated unique cellular telephone

number that received an Osborn Message, regardless of the number of Osborn Messages

the Settlement Class Member received.

59.     To make a Claim, Settlement Class members must submit by the Claims Deadline a valid

and timely Claim Form, a copy of which is attached hereto as *EXHIBIT 4* (and incorporated

into the Mailed Notice and Email Notice), by U.S. mail or through the Settlement Website.

The Claim Form shall contain the Settlement Class member's: (1) name; (2) current

address; (3) cellular telephone number(s) at which she or he was sent an Osborn Message;

(4) a current contact telephone number; and (V) representation under oath that he or she

received an Osborn Message.  If a Settlement Class member fails to fully complete a Claim

Form, the Claim Form will be invalid and rejected by the Settlement Administrator.  The

Settlement Administrator will then attempt to notify the Settlement Class member that his

or her Claim Form was deficient and rejected. Any Settlement Class member who submits

an incomplete or inaccurate Claim Form shall be permitted to re-submit a Claim Form by

the later of the Claims Deadline or 15 days of the sending of notice of the defect by the

Settlement Administrator.

60.     Settlement Fund Payments shall be sent to Settlement Class Claimants by the Settlement

Administrator via U.S. mail.  If any Settlement Fund Payments are returned, the Settlement

Administrator shall attempt to obtain a new mailing address for that Settlement Class

Claimant.  If after a second mailing, the Settlement Fund Payment is again returned, no further efforts need be taken by the Settlement Administrator to resend the check.  Each Settlement Fund Payment will be negotiable for 90 days after it is issued.

**XII.    Releases**

61.    Upon the Effective Date of the Settlement, Plaintiff and all Settlement Class Members, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Osborn and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors and officers, including Dr. Brett Osborn individually, employees, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, agents, independent contractors, text messaging service providers, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the date an order preliminary approving the Settlement Agreement is entered by the Court, that were or could have been claimed, raised, or alleged in this Action to the extent they arise from or relate to Osborn Messages sent by or on behalf of Osborn.

**XIII.    Payment of Attorneys' Fees, Costs, and Service Awards**

62.    Osborn agrees not to oppose Class Counsel's request for attorneys' fees of up to 33.33%

of the Settlement Fund and not to oppose Class Counsel's request for reimbursement of costs and expenses. Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund. The determination of Class Counsel's request for attorneys' fees shall be based on controlling Eleventh Circuit precedent involving the award of fees in common fund class actions and not based on state law. The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination.

63.     The Escrow Agent shall pay from the Settlement Fund to Class Counsel all Court-approved attorneys' fees, costs, and expenses of Class Counsel, including interest accrued thereon. Osborn shall have no responsibility for any allocation, and no liability whatsoever to any person or entity claiming any share of the funds to be distributed.

64.     Class Counsel will ask the Court to approve a Service Award of $7,500. The Service Award is to be paid from the Settlement Fund. The Service Award shall be paid to the Class Representative in addition to the Class Representative's Settlement Fund Payment. Osborn agrees not to oppose Class Counsel's request for the Service Award.

65.     The Parties negotiated and reached agreement regarding attorneys' fees and costs, and the Service Award, only after reaching agreement on all other material terms of this Settlement.

## XIV.   Termination of Settlement

66.     This Settlement may be terminated by either Class Counsel or Osborn by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 30 days (or such longer time as may be agreed in writing between Class Counsel and Osborn) after any of the following occurrences:

a.    the Court fails to preliminarily approve the Settlement within 180 days after filing of the motion for preliminary approval, or fails to finally approve the Settlement within 360 days of Preliminary Approval by the Court;

b.    an appellate court vacates or reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand within 270 days of such reversal;

c.    if the number of opt outs exceed 100 and Osborn, within 10 days of the Opt Out deadline, gives written notice of its decision to void the settlement; or

d.    the Effective Date does not occur.

**XV.    Effect of a Termination**

67.    In the event of a termination, this Agreement shall be considered null and void; all of Plaintiff's, Class Counsel's, and Osborn's obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to BCS Insurance Company; and the Parties shall return to the status *quo ante* in the Action as if the Parties had not entered into this Agreement.   In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims and defenses will be retained and preserved.

68.    In the event of a termination as, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid by BCS Insurance Company on behalf of Osborn, pursuant to its obligation to pay settlement expenses directly, the Escrow Agent shall return the balance of the Settlement Fund to BCS Insurance Company within 5 business days of termination.

69.    The Settlement shall become effective on the Effective Date unless earlier terminated.

28

70.     In the event the Settlement is terminated, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

**XVI.   <u>No Admission of Liability; Non-Disparagement</u>**

71.     Osborn continues to dispute its liability for the claims alleged in the Action, and maintains that its complied, at all times, with applicable laws and regulations.  Osborn does not by this Agreement or otherwise admit any liability or wrongdoing of any kind.  Osborn has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

72.     Class Counsel believes that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action.  Class Counsel fully investigated the facts and law relevant to the merits of the claims, and conducted extensive discovery.

73.     Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

74.     The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be

deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

75.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiff or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

76.     In addition to any other defenses Osborn may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

**XVII.  <u>Miscellaneous Provisions</u>**

77.     <u>Gender and Plurals</u>.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

78.     <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

79.     <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, uphold Court approval, and do

all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.  This obligation of the Parties to support and complete the Settlement shall remain in full force and effect regardless of events that may occur.

80.     Obligation To Meet And Confer.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

81.     Integration.  This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

82.     No Conflict Intended.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

83.     Governing Law.  Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

84.     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

85.     Jurisdiction.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved

by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice program, the Settlement Administrator, the Notice Administrator, the Tax Administrator, and the Escrow Agent.   As part of their respective agreements to render services in connection with this Settlement, the Settlement Administrator, the Notice Administrator, the Tax Administrator, and the Escrow Agent shall consent to the jurisdiction of the Court for this purpose.

86.     <u>Notices</u>.  All notices to Class Counsel provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

> Scott Edelsberg, Esq.
> Edelsberg Law, PA
> 20900 NE 30th Ave, Suite 417
> Aventura, FL 33180

All notices to Osborn, provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

> Paul Karlsgodt
> BAKER HOSTETLER
> 1801 California Street, Suite 4400
> Denver, CO 80202
> Email: pkarlsgodt@bakerlaw.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any Party, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice program.

87.  <u>Modification and Amendment</u>.  This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and counsel for Osborn and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

88.  <u>No Waiver</u>.  The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

89.  <u>Authority</u>.  Class Counsel (for the Plaintiff and the Settlement Class Members), and counsel for Osborn, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiff and Osborn to all terms of this Agreement.  Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

90.  <u>Agreement Mutually Prepared</u>.  Neither Osborn nor Plaintiff, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

91.  <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  Osborn has provided or will

provide the Osborn Spreadsheet to the Notice Administrator . It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

92.   Receipt of Advice of Counsel. Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Release, received independent legal advice with respect to the advisability of entering into this Agreement and the Release and the legal effects of this Agreement and the Release, and fully understands the effect of this Agreement and the Release.

93.   Class Counsel will return or destroy all copies of discovery materials obtained in this litigation from Defendants or third parties within thirty (30) days after the Effective Date.

(signatures on following page)

Dated: _Mar 25, 2019_ _____

Mary Mclean (Mar 25, 2019)
_____
Mary Mclean
*Plaintiff*

Dated: 3/25/19 _____

_____
Scott Edelsberg
*Class Counsel*

Dated: _____

_____
Brett A. Osborn, D.O., PLLC
*Defendant*

Dated: _____

_____
Julie Singer Brady
*Counsel for Defendant*

35

Dated: _____       _____
                                       Mary Mclean
                                       *Plaintiff*


Dated: _____       _____
                                       Scott Edelsberg
                                       *Class Counsel*


Dated: ___3/25/2019___                 _____
                                       Brett A. Osborn, D.O., PLLC
                                       *Defendant*


Dated: ___3/25/2019___                 _____
                                       Julie Singer Brady
                                       *Counsel for Defendant*

35

# EXHIBIT 1

**If You Received a Text Message and/or Voicemail Message from Brett A. Osbron, D.O., PLLC,**
**You May Be Entitled to a Payment from a Class Action Settlement.**

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

An $800,000.00 fund has been reached in a class action lawsuit concerning claims that Brett A. Osbron, D.O., PLLC ("Osborn") sent text messages and ringless voicemails to wireless telephone numbers without express written consent of the recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Osborn denies the allegations in the lawsuit, and the Court has not decided who is right.

**Who's Included?** You received this email because Osborn's records show that you may be a Settlement Class Member. The Settlement includes all persons in the United States who received one or more text messages and/or ringless voicemail sent by or on behalf of Osborn between September 13, 2014 and the date of Final Approval.

**What Are the Settlement Terms?** Osborn has agreed to pay $800,000.00 to create a fund that will be used to pay individuals who submit valid Claims, attorneys' fees, a Service Award to the Class Representative, and costs and expenses of the litigation. The cash payments from the Settlement Fund will be distributed on a pro rata basis to Settlement Class Members who submit a valid Claim. Only one Claim is allowed per Settlement Class Member.

**How Can I Get a Payment?** To get a payment, you must submit a Claim Form by U.S. mail or via email to info@DROTCPAsettlement.com. A Claim Form is attached to this notice. You may also download or file a Claim Form online at www.DROTCPAsettlement.com or call the Settlement Administrator at the toll-free number below to request a Claim Form. If you send in a Claim Form by regular mail, it must be postmarked on or before xxxxxxxxxx. The deadline to file a Claim online or via email is 11:59 p.m. EST on xxxxxxxxxx.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by xxxxxxxxxx. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement Website. You may object to the Settlement by xxxxxxxxxx. The Long Form Notice available on the Settlement Website listed below explains how to exclude yourself or object. The Court will hold a Final Approval Hearing on xxxxxxxxxx to consider whether to approve the Settlement, a request for attorneys' fees of up to 33.33% of the Settlement Fund, and a Service Award of $7,500 to the Class Representative. You are not required to, but you may appear at the hearing, either yourself or through an attorney you hire. For more information, call or visit the Settlement Website.

**www.DROTCPAsettlement.com**                                     **1- 844-551-1722**

# EXHIBIT 2

Settlement Administrator PO Box 6006
Portland, OR 97208-6006

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO. 2882

# Legal Notice about a Class Action Settlement

<<BARCODE>>

<<NAME1>>
<<NAME2>>
<<ADDRESS1>>
<<ADDRESS2>>
<<CITY, ST, ZIP>>
<<COUNTRY>>

<<Mail ID>>                                                    **Claim Form**

To submit a Claim for a payment from the Settlement Fund, please fill out the Claim Form below and submit it via email to info@DROTCPAsettlement.com or by U.S. mail. You may also file a Claim Form online at www.DROTCPAsettlement.com. The deadline to file a claim online or via email is **11:59 p.m. EST on XXXXXXXXXX**. If you send in a Claim Form by regular mail, it must be postmarked on or before **XXXXXXXXXX**.

*First Name:                          *MI:      *Last Name:

*Address:

*City:                                            *State:        *ZIP Code:

*Cellular Telephone Number that received one or more texts from TD.IC:

Telephone Number where you can be reached if different from above:

Your Email Address:

*I declare under penalty of perjury that to the best of my knowledge I received one (1) or more text messages and/or ringless voicemail sent by or on behalf of Osborn.

*Signature:                                                    *Date (MM/DD/YY):

**\*Denotes Information You Must Provide To Have A Valid Claim**
Questions? Visit www.DROTCPAsettlement.com or call 1-844-551-1722

000004/00995239_1

## Brett A. Osborn, D.O., PLLC, LLC, You May Be Entitled to a Payment from a Class Action Settlement.

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

An \$800,000.00 fund has been reached in a class action lawsuit concerning claims that Brett A. Osborn, D.O., PLLC ("Osborn") sent text messages and ringless voicemails o wireless telephone numbers without express written consent of the recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. TDCJ denies the allegations in the lawsuit, and the Court has not decided who is right.

**Who's Included?** You received this email because Osborn's records show that you may be a Settlement Class Member. The Settlement includes all persons in the United States who received one or more text messages and/or ringless voicemail sent by or on behalf of Osborn between September 13, 2014 and the date of Final Approval.

**What Are the Settlement Terms?** Osborn has agreed to pay \$800,000.00 to create a fund that will be used to pay individuals who submit valid Claims, attorneys' fees, a Service Award to the Class Representative, and costs and expenses of the litigation. The cash payments from the Settlement Fund will be distributed on a pro rata basis to Settlement Class Members who submit a valid Claim. Only one Claim is allowed per Settlement Class Member.

**How Can I Get a Payment?** To get a payment, you must submit a Claim Form by U.S. mail or via email to info@DROTCPAsettlement.com. A Claim Form is attached to this notice. You may also download or file a Claim Form online at www.DROTCPAsettlement.com or call the Settlement Administrator at the toll-free number below to request a Claim Form. If you send in a Claim Form by regular mail, it must be postmarked on or before **xxxxxxxxxx**. The deadline to file a Claim online or via email is **11:59 p.m. EST on xxxxxxxxxx**.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **xxxxxxxxxx**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement Website. You may object to the Settlement by **xxxxxxxxxx**. The Long Form Notice available on the Settlement Website listed below explains how to exclude yourself or object. The Court will hold a Final Approval Hearing on **xxxxxxxxxx** to consider whether to approve the Settlement, a request for attorneys' fees of up to 33.33% of the Settlement Fund, and a Service Award of \$7,500 to the Class Representative. You are not required to, but you may appear at the hearing, either yourself or through an attorney you hire.. For more information, call or visit the Settlement Website.

| www.DROTCPAsettlement.com | 1-888-551-1722 |
|---|---|

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

# BUSINESS REPLY MAIL
FIRST-CLASS MAIL          PERMIT NO 581          PORTLAND OR

POSTAGE WILL BE PAID BY ADDRESSEE

OSBORN TCPA SETTLEMENT ADMINISTRATOR
PO BOX 6006
PORTLAND OR  97208-6006

ılıılılllılılılıyllıqllylılıllilllıllılılılılıllılılılı

# EXHIBIT 3

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

# If You Were Sent a Text Message and/or Voicemail Message from Brett A. Osbron, D.O., PLLC, You May Be Entitled to a Payment from a Class Action Settlement.

*A federal court authorized this Notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement[1] has been reached in a class action lawsuit concerning claims that Brett A. Osbron, D.O., PLLC ("Osborn") sent text messages and  ringless voicemails to mobile telephone numbers without prior express written consent of the recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Osborn denies the allegations in the lawsuit and the Court has not decided who is right.

- The Settlement offers payments to Settlement Class Members who file valid Claims.

- Your legal rights are affected whether you act or do not act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | If you are a member of the Settlement Class, you must submit a completed Claim Form to receive a payment. If the Court approves the Settlement and it becomes final and effective, and you remain in the Settlement Class, you will receive your payment by check. |
| **EXCLUDE YOURSELF** | You may request to be excluded from the Settlement and if you do, you will receive no benefits from the Settlement. |
| **OBJECT** | Write to the Court if you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak in court about the fairness of the Settlement. |
| **DO NOTHING** | You will not receive a payment if you fail to timely submit a completed Claim Form, and you will give up your right to bring your own lawsuit against Osborn about the Claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. If the Court  does, and after any appeals are resolved, benefits will be distributed to those who submit qualifying Claim Forms. Please be patient.

---

[1] Capitalized terms herein have the same meanings as those defined in the Settlement Agreement, a copy of which may be found online at the Settlement Website below.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**..........................................................................................**PAGE 3**
1. Why is there a Notice?
2. What is this litigation about?
3. What is the Telephone Consumer Protection Act?
4. Why is this a class action?
5. Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT**.......................................................**PAGE 4**
6. Who is included in the Settlement?
7. What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS**.................................................................**PAGE 4**
8. What does the Settlement provide?
9. How do I file a Claim?
10. When will I receive my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**................................**PAGE 5**
11. How do I get out of the Settlement?
12. If I do not exclude myself, can I sue Osborn for the same thing later?
13. What am I giving up to stay in the Settlement Class?
14. If I exclude myself, can I still get a payment?

**THE LAWYERS REPRESENTING YOU**.......................................................**PAGE 6**
15. Do I have a lawyer in the case?
16. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**..........................................................**PAGE 6**
17. How do I tell the Court I do not like the Settlement?
18. What is the difference between objecting and asking to be excluded?

**THE FINAL APPROVAL HEARING**.............................................................**PAGE 7**
19. When and where will the Court decide whether to approve the Settlement?
20. Do I have to attend the hearing?
21. May I speak at the hearing?

**IF YOU DO NOTHING**...............................................................................**PAGE 8**
22. What happens if I do nothing at all?

**GETTING MORE INFORMATION**..............................................................**PAGE 8**
23. How do I get more information?

# BASIC INFORMATION

## 1.   Why is there a Notice?

A court authorized this Notice because you have a right to know about a proposed Settlement of a class action lawsuit known as *MCLEAN v. BRETT A. OSBORN, D.O.*, *PLLC* Case No. 18-cv-81222-DMM and about all of your options before the Court decides whether to give Final Approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge Middlebrooks of the United States District Court, Southern District of Florida is overseeing this case. The person who sued, Mary Mclean, is called the "Plaintiff." Osborn, is called the "Defendant."

## 2.   What is this litigation about?

The lawsuit alleges that Osborn sent text messages and ringless voicemails to Plaintiff's and the Settlement Class Members wireless telephone numbers without prior express written consent in violation of the Telephone Consumer Protection Act 47 U.S.C. § 227 ("TCPA") and seeks actual and statutory damages under the TCPA on behalf of the named Plaintiff and a class of all individuals in the United States.

Osborn denies each and every allegation of wrongdoing, liability, and damages that were or could have been asserted in the litigation and denies that the claims in the litigation would be appropriate for class treatment if the litigation were to proceed through trial.

The Plaintiff's Complaint, Settlement Agreement, and other case-related documents are posted on the Settlement Website, www.DROTCPAsettlement.com. The Settlement resolves the lawsuit. The Court has not decided who is right.

## 3.   What is the Telephone Consumer Protection Act?

The Telephone Consumer Protection Act (commonly referred to as the "TCPA") is a federal law that restricts telephone solicitations and the use of automated telephone equipment. The Plaintiff here alleged that Osborn sent marketing text messages and/or ringless voicemails to individuals without the requisite prior written consent in violation of the TCPA.

## 4.   Why is this a class action?

In a class action, one person called the "Class Representative" (in this case, Plaintiff Mary Mclean) sues on behalf of himself and other people with similar claims.

All of the people who have claims similar to the Plaintiff's are members of the Settlement Class, except for those who exclude themselves from the class.

## 5.   Why is there a settlement?

The Court has not found in favor of either Plaintiff or Osborn. Instead, both sides have agreed to a settlement. By agreeing to the Settlement, the parties avoid the costs and uncertainty of a trial, and if the Settlement is approved by the Court, Settlement Class Members will receive the benefits described in this Notice. Osborn denies all liability in this case. Plaintiff and her lawyers think the proposed Settlement is best for everyone who is affected.

# WHO IS PART OF THE SETTLEMENT

| **6.   Who is included in the Settlement?** |
|---|

The Settlement includes all individuals (within or outside of the United States) (i) who were sent one or more text messages or voicemail messages ("Osborn Messages") (ii) on his or her cellular telephone (iii) by or on behalf of Osborn, (iv) from September 13, 2014 through the date of Final Approval.

Excluded from the Settlement Class are (A) Defendant, Defendant's officers, Defendant's directors, and their immediate family members; (B) Class Counsel; and (C) the judges who have presided over the litigation and their immediate family members.

| **7.   What if I am not sure whether I am included in the Settlement?** |
|---|

If you are not sure whether you are in the Settlement Class or have any other questions about the Settlement, visit the Settlement Website at www.DROTCPAsettlement.com or call the toll-free number, 1-844-551-1722. You also may send questions to the Settlement Administrator at Osborn TCPA Settlement Administrator, P.O. Box 6006, Portland, OR 97208-6006.

# THE SETTLEMENT BENEFITS

| **8.   What does the Settlement provide?** |
|---|

Osborn has agreed to pay $800,000.00 to create a cash Settlement Fund. The Settlement Fund will be used to pay all Settlement Costs, an attorneys' fee award, and a Service Award to the Class Representative. The remaining Net Settlement Fund shall be distributed as cash payments to Settlement Class Members who submit valid Claims. The cash payments will be distributed on a pro rata basis to Settlement Class Members depending on the number of valid Claims filed. Each Settlement Class Member may file one Claim and receive one cash payment.

| **9.   How do I file a Claim?** |
|---|

If you qualify for a cash payment, you must complete and submit a valid Claim Form. You can file your Claim Form online at www.DROTCPAsettlement.com or download a Claim Form from the Settlement Website and email it to info@DROTCPAsettlement.com send it by U.S. Mail to the address below.  The deadline to file a Claim online or via email is **11:59 p.m. EST on xxxxxxxxx**.

If you received a Claim Form in the mail with a postcard summary of this Notice, simply complete, sign, and mail the form by U.S. Mail to the address below. The postage is pre-paid and there is no need for a stamp.

Claim Forms submitted by mail must be postmarked on or before **xxxxxxxxxx** to:

Osborn Settlement Administrator
P.O. Box 6006
Portland, OR 97208-6006

No matter which method you choose to file your Claim Form, please read the Claim Form carefully and provide all the information required. Only one Claim Form may be submitted per Settlement Class Member.

**10. When will I receive my payment?**

Payments to Settlement Class Members will be made only after the Court grants Final Approval to the Settlement and after any appeals are resolved (*see* "Final Approval Hearing" below). If there are appeals, resolving them can take time. Please be patient.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep the right to sue or continue to sue Osborn on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement Class.

**11. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a timely letter by mail to:

Osborn Settlement Administrator
P.O. Box 6006
Portland, OR 97208-6006

Your request to be excluded from the Settlement must be personally signed by you under penalty of perjury and contain a statement that indicates your desire to be "excluded from the Settlement Class" and that, absent of excluding yourself or "opting out," you are "otherwise a member of the Settlement Class."

Your exclusion request must be postmarked no later than **xxxxxxxxx**. You cannot ask to be excluded on the phone, by email, or at the Settlement Website.

You may opt out of the Settlement Class only for yourself.

**12. If I do not exclude myself, can I sue Osborn for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue Osborn for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to pursue your own lawsuit.

**13. What am I giving up to stay in the Settlement Class?**

Unless you opt out of the Settlement, you cannot sue or be part of any other lawsuit against Osborn about the issues in this case, including any existing litigation, arbitration, or proceeding. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at www.DROTCPAsettlement.com. The Settlement Agreement provides more detail regarding the Releases and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Settlement Class listed in Question 15 for free, or you can, at your own expense, talk to your own lawyer if you have any questions about the Released Claims or what they mean.

**14. If I exclude myself, can I still get a payment?**

No. You will not get a payment from the Settlement Fund if you exclude yourself from the Settlement.

# THE LAWYERS REPRESENTING YOU

**15. Do I have a lawyer in the case?**

The Court has appointed the following lawyers as "Class Counsel" to represent all members of the Settlement Class.

Scott Edelsberg
**Edelsberg Law**

Manuel Hiraldo
**Hiraldo Law**

Andrew Shamis
**Shamis & Gentile**

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

**16. How will the lawyers be paid?**

Class Counsel intend to request up to 33.33% of the value of the Settlement for attorneys' fees plus reimbursement of reasonable, actual out-of-pocket expenses incurred in the litigation. The fees and expenses awarded by the Court will be paid out of the Settlement Fund. The Court will decide the amount of fees and expenses to award.

Class Counsel will also request that a Service Award of $7,500.00 be paid from the Settlement Fund to the Class Representative for his service as representative on behalf of the whole Settlement Class.

# OBJECTING TO THE SETTLEMENT

**17. How do I tell the Court if I do not like the Settlement?**

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement. To object, you must timely submit a letter that includes the following:

1) A heading that includes the case name and case number— *MCLEAN v. BRETT A. OSBORN, D.O., PLLC* Case No. 18-cv-81222-DMM;

2) Your name, address, telephone number, the cell phone number at which you received text messages and/or ringless voicemails from Osborn, and if represented by counsel, the name, bar number, address, and telephone number of your counsel;

3) A signed statement stating, under penalty of perjury, that you received one or more text messages and/or ringless voicemails sent by or on behalf of Osborn and are a member of the Settlement Class;

4) A statement of all your objections to the Settlement including your legal and factual basis for each objection;

5) A statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel, and if with counsel, the name of your counsel who will attend;

6) The number of times in which your counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that you file the objection, the caption of each case in which counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each listed case;

7) A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

8) Any and all agreements that relate to the objection or the process of objecting—whether written or verbal—between you or your counsel and any other person or entity.

If you wish to object, you must file your objection with the Court (using the Court's electronic filing system or in any manner in which the Court accepts filings) and mail your objection to each of the following three (3) addresses, and your objection must be postmarked by XXXXXXXXXXXXX.

| Clerk of the Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| United States District Court for the Southern District of Florida 400 N. Miami Ave Miami, FL 33128 | Scott Edelsberg Edelsberg Law, PA 20900 NE 30th Ave, Suite 417 Aventura, FL 33180 | Julie Singer Brady BAKER & HOSTETLER, LLP 2300 Suntrust Center 200 South Orange Avenue Post Office Box 112 |

### 18. What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

## THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses ("Final Approval Hearing").

### 19. When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a Final Approval Hearing on **xxxxxxx at xxx a.m.** at the xxxxxxxxxxxxx. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.DROTCPAsettlement.com for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider the requests by Class Counsel for attorneys' fees and expenses and for a Service Award to the Class Representative. If there are objections, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlement. It is unknown how long these decisions will take.

### 20. Do I have to attend the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time to the proper addresses and it complies with

all the other requirements set forth above, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it is not necessary.

| 21. May I speak at the hearing? |
| --- |

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, your timely filed objection must include a statement of whether you intend to appear at the Final Approval Hearing (*see* Question 17 above).

You cannot speak at the hearing if you exclude yourself from the Settlement.

## IF YOU DO NOTHING

| 22. What happens if I do nothing at all? |
| --- |

If you are a Settlement Class member and do nothing, meaning you do not file a timely Claim, you will not get benefits from the Settlement. Further, unless you exclude yourself, you will be bound by the judgment entered by the Court.

## GETTING MORE INFORMATION

| 23. How do I get more information? |
| --- |

This Notice summarizes the proposed Settlement. You are urged to review more details in the Settlement Agreement. For a complete, definitive statement of the Settlement terms, refer to the Settlement Agreement at www.DROTCPAsettlement.com. You also may write with questions to the Settlement Administrator at Osborn Settlement Administrator, P.O. Box 6006, Portland, OR 97208-6006 or call the toll-free number, 1-888-551-1722.

# EXHIBIT 4

## CLAIM FORM

To submit a Claim for a payment from the Settlement Fund, please fill out the Claim Form below and submit it via email to info@DROTCPAsettlement.com or by U.S. mail. You may also file a Claim Form online at www.DROTCPAsettlement.com. The deadline to file a claim online or via email is **11:59 p.m. EST on xxxxxxxx**. If you send in a Claim Form by regular mail, it must be postmarked on or before **xxxxxxxxx**.

*First Name:                                                    *MI:        *Last Name:

*Address:

*City:                                                                    *State:        *ZIP Code:

*Cellular Telephone Number that received one or more texts or voicemail messages from Osborn:

Telephone Number where you can be reached if different from above:

Your Email Address:

*I declare under penalty of perjury that to the best of my knowledge I received one (1) or more text messages and/or ringless voicemail sent by or on behalf of Osborn between September 13, 2014 and (the date of Final Approval).

*Signature:                                                    *Date:

**\*Denotes Information You Must Provide To Have A Valid Claim**

To submit by U.S. Mail, send the Claim Form to the following address:

Osborn TCPA Settlement Administrator
PO Box 6006
Portland, OR 97228-6006

Questions? Visit www.DROTCPAsettlement.com  or call 1-888-457-6608